949 P.2d 183

**WAIKIKI MARKETPLACE INVEST-MENT COMPANY, a Hawai'i general partnership, Appellant–Appellant,**

v.

**CHAIR OF ZONING BOARD OF APPEALS OF THE CITY AND COUNTY OF HONOLULU, Appellee–Appellee,**

and

**Director of Land Utilization of the City and County of Honolulu, Appellee.**

**No. 17001.**

Intermediate Court of Appeals of Hawai'i.

Nov. 25, 1997.

Nalani P. Wilson–Ku, Deputy Corporation Counsel, City and County of Honolulu, on the brief, for appellee-appellee.

Arnold T. Abe, Deputy Corporation Counsel, City and County of Honolulu, on the brief for appellee Director of Land Utilization of the City and County of Honolulu.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

WATANABE, Judge.

Appellant-Appellant Waikiki Marketplace Investment Company, a Hawai'i general partnership (Appellant), appeals from the March 11, 1993 Order of the First Circuit Court (the circuit court) which denied, for lack of jurisdiction, Appellant's appeal from the July 14, 1992 Order of Appellee–Appellee Zoning Board of Appeals (ZBA) of the City and County of Honolulu (County) (the ZBA Order). The ZBA Order had, in turn, denied Appellant's appeal from the August 27, 1991 "Notice of Order 91/LUV–91" issued by Appellee, the Director of the County Department of Land Utilization, which ordered Appellant to: remove a masonry storage addition allegedly constructed in violation of Land Use Ordinance (LUO) § 7.80; pay a $200 fine by September 26, 1991; and in the event the violation was not corrected by September 26, 1991, pay an additional daily fine of $50 until corrective action was taken. (Hereafter, the County Department of Land Utilization will be referred to as the DLU, and the Director of the DLU will be referred to as the DLU Director.) The daily fine was subsequently increased by the DLU Director to $200 a day.

We reverse.

## BACKGROUND

### A.

On February 1, 1991, the County Building Department (Building Department) issued a Notice of Violation (the Notice) to Scruples, Inc. (Scruples), a nightclub located at 2310 Kūhiō Avenue. The Notice informed Scruples that: (1) a masonry storage addition (the addition) "was constructed at the rear of

David C. Schutter (Schutter & Glickstein, of counsel), on the briefs, Honolulu, for appellant-appellant.

the property without first obtaining a building permit[,]" in violation of Revised Ordinances of Honolulu (ROH) chapter 18, § 18–3.1; (2) "[t]he addition is located within the 10' rear yard where structures are not allowed[,]" in violation of ROH chapter 21A, §§ 7.80–4.B.1 and 7.80–3.A; and (3) a "Special Design Permit has not been obtained for the project[,]" in violation of ROH chapter 21A § 7.20–2. The Notice instructed Scruples to "[r]emove the addition located within the 10' rear yard" where structures are not allowed, and notify Building Department inspector Edwin Fukushima when the corrections were made. The Notice also stated:

If no action is taken within thirty (30) days to make corrections:

1. This matter will be referred to the Prosecuting Attorney and/or Corporation Counsel for appropriate action; and/or

2. This matter will be referred to the [DLU] for CIVIL FINES for violations of the [LUO]; and/or

3. A Notice of Order will be issued by the Building Department imposing CIVIL FINES for the specified violations.

The matter was subsequently referred to the DLU for follow-up.

On August 27, 1991, the DLU issued Notice of Order No. 91/LUV–91 (the DLU Order) to Appellant, as lessee of the property.[1] The DLU Order found Appellant to be in violation of LUO § 7.80 because "[a] masonary [sic] storage addition was constructed within the 10–foot rear yard setback area." The DLU Order imposed a one-time fine of $200, ordered that the structure be removed by September 26, 1991, and noted that a daily fine of $50 would be imposed if the structure were not removed by September 26, 1991. The DLU Order, which was delivered to Appellant by certified mail on August 28, 1991, also stated as follows:

This order shall become final on September 26, 1991. On or before the final date,

any person(s) subject to an order may appeal the order. However, an appeal does not suspend any provision of this order, including the imposition of the daily fine. This means that before the order becomes final, you must either correct or appeal the order. The fine must be paid even if you take corrective action.

The appeal must be received within 30 calendar days from the date of mailing or personal service of the order. The appeal must be made in accordance with the Administrative Rules of the [ZBA]. Essentially, the [ZBA] rules require that a petitioner show that the [DLU] Director based his action on an erroneous finding of a material fact, and/or that the [DLU] Director acted in an arbitrary or capricious manner, or manifestly abused his discretion. (The role of the [ZBA] is not to review the merits of the case.)

On September 27, 1991, Appellant filed with the ZBA a petition for appeal from the action of the DLU Director (the petition). Appellant claimed that the addition was constructed prior to the enactment of the LUO in 1984 and that at the time of its construction, the addition was subject to the Comprehensive Zoning Code (the CZC), which did not impose any rear setback requirement for the property. Therefore, Appellant argued, the addition was grandfathered in as a lawful "nonconforming use" or "nonconforming structure" under the LUO. Without conceding the lawfulness of the use of the addition, Appellant also informed the ZBA that "as an alternative remedy, [Appellant] has filed an application for a variance with the [DLU]."

On May 14, 1992, the ZBA held a public hearing and received the following stipulations of fact:

● The storage addition was constructed prior to adoption of the LUO in 1984.

● The storage addition could have been legally built under the CZC, the precursor to the LUO.

---

1. The record suggests that Appellant–Appellant Waikiki Marketplace Investment Company (Appellant) was not actually the lessee of the property. During proceedings before the Zoning Board of Appeals (ZBA) of the City and County of Honolulu (County), Appellant's attorney represented that Appellant "has a sub-subleasehold interest in the Property under that certain sub-sublease dated October 1, 1976 by and between Vista Development Corporation, a Hawaii [Hawai'i] corporation, and the [Appellant]."

Although conceding that the addition was a permissible use under the zoning ordinances when constructed, the DLU's attorney argued, for the first time at the hearing, that the addition was nevertheless in violation of the LUO:

> The controversy in this case is whether or not that structure or addition was legally constructed. It is the [DLU] Director's position that this addition was built without a building permit and therefore it is not a legal construction and therefore it cannot be grandfathered in as a nonconforming use because it was never a legal addition to begin with.

Undisputed evidence was introduced at the hearing that the Building Department had destroyed all pre-July 17, 1978 building plans for work valued at less than $100,000. Therefore, no official records existed that could be used to determine whether a building permit for the addition had ever been obtained. Although the DLU conceded that a building permit may have been obtained for the addition, its position at the hearing was that because Appellant did not place into evidence a building permit for the addition and affirmatively prove that a permit had been issued, Appellant had failed to satisfy its burden to prove that the addition was a "previously lawful" "nonconforming use" or "nonconforming structure" under the LUO.

### B.

The ZBA is established pursuant to Revised Charter of the City and County of Honolulu (Revised Charter) § 6–909 (1994 ed.), which provides:

> There shall be a zoning board of appeals which shall consist of five members. The board shall be governed by the provisions of Section 13–103 of this charter. The zoning board of appeals shall hear and determine appeals from the actions of the director of land utilization in the administration of the zoning code and subdivision ordinances and any rules and regulations adopted pursuant thereto. An appeal shall be sustained only if the board finds that the director's action was based on an erroneous finding of a material fact, or that the director had acted in an arbitrary or capricious manner or had manifestly abused discretion.

Pursuant to Revised Charter § 13–103 (1994 ed.), which governs the actions of County boards such as the ZBA, "[a] majority of the members [of a board] shall constitute a quorum[,]" and "[t]he affirmative vote of a majority of the entire membership shall be necessary to take any action, and such action shall be made at a meeting open to the public." Revised Charter § 13–103(g) and (i). Therefore, in order to take action on an appeal pending before it, the ZBA is required to have at least three members present to hear an appeal and the concurrence of at least three of its members to decide the appeal.

At the May 14, 1992 hearing, four of the members of the ZBA were present when the hearing convened at 1:05 p.m. However, one member left the hearing at 1:45 p.m., and the remaining three members were thereafter unable to reach concurrence as to the action to be taken on Appellant's appeal. Consequently, action on Appellant's appeal was deferred to the ZBA's May 28, 1992 meeting, in accordance with ZBA Rule 1.9(b) of the Rules Relating to the Administrative Procedure of the ZBA (the ZBA Rules), which provides in pertinent part that

> [f]ailure to obtain a majority vote, whether due to abstention or absence of members, or for any other reason, shall automatically defer the item until the next regular meeting of the Board or a specific date determined by the Board. Failure to obtain a majority vote at two separate meetings will constitute a denial of the requested action or of an appeal.

At the May 28, 1992 hearing, with four of its five members in attendance, the ZBA was deadlocked, two to two, on a motion to sustain the DLU Order. Having failed to obtain a majority vote at two separate meetings, the ZBA, in accordance with ZBA Rule 1.9(b), issued an Order Denying Appellant's Appeal on July 14, 1992 (the ZBA Order).

On July 31, 1992, Appellant timely filed an appeal from the ZBA Order to the circuit court. On March 11, 1993, the circuit court

issued an Order Denying Appellant's Appeal on the following grounds:

1. The ZBA lacked jurisdiction to hear Appellant's appeal. Therefore, the [c]ourt does not have jurisdiction to entertain the instant appeal since the appeal from the ZBA, which was without jurisdiction, does not confer jurisdiction upon this [c]ourt.

2. In the alternative:

A. Appellant failed to establish beyond a reasonable doubt the unconstitutionality of LUO Section 8.60-2(B) and (C).

B. The ZBA findings were not clearly erroneous.

This timely appeal from the circuit court's order followed.

## ISSUES ON APPEAL

Appellant's appeal raises the following issues:

I. Whether Appellant's petition to the ZBA was timely.

II. Whether the addition was grandfathered in as a legal "nonconforming use" or "nonconforming structure" under the LUO.

III. Whether the ZBA has authority to review the DLU Director's imposition of a fine.

IV. Whether an appellant's petition to the ZBA could be denied without the affirmative vote of a majority of the entire board.

## STANDARDS OF REVIEW

■ A. In each appeal, an appellate court is required to determine whether it has jurisdiction. *Wong v. Wong,* 79 Hawai'i 26, 29, 897 P.2d 953, 956 (1995).

A judgment rendered by a court without subject matter jurisdiction is void, questions about the trial court's subject matter jurisdiction may be raised at any stage of the case, and we have jurisdiction here on appeal, not on the merits, but for the purpose of correcting an error in jurisdiction.

*Id.* (quotation marks and citations omitted).

■ B. Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. In reviewing the circuit court's decision, an appellate court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in Hawai'i Revised Statutes (HRS) § 91-14(g) (1993) to the agency's decision. *Hardin v. Akiba,* 84 Hawai'i 305, 309, 933 P.2d 1339, 1343 (1997).

HRS § 91-14(g) (1993) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The Hawai'i Supreme Court has stated that under HRS § 91-14(g),

conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6). Accordingly, a reviewing court will reverse an agency's finding of fact if it concludes that such agency finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. On the other hand, the agency's conclusions of law are freely reviewable.

*Hardin,* 84 Hawai'i at 310, 933 P.2d at 1344 (citation omitted).

■ C. Construction of municipal ordinances is a matter of statutory interpretation, the correctness of which is freely reviewable. *Foster Village Community Ass'n v. Hess,* 4 Haw.App. 463, 468, 667 P.2d 850,

853 (1983). Consequently, the ZBA's construction of a zoning ordinance is freely reviewable. *Id.*

## DISCUSSION

I. *Whether Appellant's petition to the ZBA was timely.*

At the circuit court level, Appellees DLU and ZBA (collectively, Appellees) argued, for the first time, that Appellant's petition to the ZBA was untimely, thereby divesting the ZBA of jurisdiction to consider the petition and in turn precluding the circuit court from exercising jurisdiction to review the merits of Appellant's petition.

Appellees pointed out that pursuant to ZBA Rule 3.2, "[a] written petition appealing an action of the [DLU] Director must be received at the Department of Land Utilization *within 30 days of the date of mailing or personal service* of the [DLU] Director's written decision[.]" (Emphasis added.) According to Appellees, the DLU Order was mailed to Appellant on August 27, 1991, and therefore, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 5(b), "service" upon Appellant was complete upon mailing. Since Appellant's appeal from the DLU Order was filed with the ZBA on September 27, 1991, thirty-one days after the DLU Order was allegedly mailed, Appellees maintained that the petition was untimely and the ZBA lacked jurisdiction to consider the petition. The circuit court agreed with Appellee's jurisdictional argument and denied Appellant's appeal on this basis.

We conclude that Appellant's petition to the ZBA was timely and that the circuit court was wrong in concluding otherwise.

A.

■ We note initially that ZBA Rule 3.2, which requires a petition from an action of the DLU Director to be received "within 30 days of the date of mailing or personal service of the [DLU] Director's written decision," appears to be slightly inconsistent with LUO § 21–8.60–2(c), the ordinance which the DLU Director referred to in citing Appellant for violating the rear yard setback requirement of the LUO.[2] LUO § 21–8.60–2(c) states:

Effect of Order—Right to Appeal. The provisions of the order issued by the director under this section shall become final *30 days after the date of the mailing or delivery* of the order. The person may appeal the order to the zoning board of appeals as provided in Section 6–909 of the city charter.

(Emphasis added.)

The LUO thus speaks of "mailing or *delivery*" of an order, not "mailing or *personal service*" as the ZBA Rules require. The ZBA Rules do not clarify what constitutes effective "personal service" for purposes of ZBA Rule 3.2. Based on LUO § 21–8.60–2(c), however, we conclude that delivery of a decision or order of the DLU Director constitutes effective "personal service" for purposes of compliance with ZBA Rule 3.2.

B.

■ The record on appeal contains a Domestic Return Receipt from the United States Postal Service, indicating that the DLU Order was delivered by certified mail to Appellant on August 28, 1991. However, there is no evidence, e.g., a postmarked envelope or a certificate of mailing, which re-

---

**2.** The source note following Rule 3.2(a) of the Rules Relating to Administrative Procedure of the County ZBA indicates that the rule is authorized by Revised Ordinances of Honolulu (ROH) § 22–3.7. ROH § 22–3.7 provides, in part:

 (a) An applicant aggrieved by an action of the director [of the County department of land utilization] in the administration of the subdivision ordinance or rules and regulations, may appeal to the zoning board of appeals within 15 days after receipt of the notice of such action. . . .

The rule thus does not comport with the ordinance which allegedly authorized adoption of the rule. ZBA Rule 3.2(a) appears to be more consistent with Land Use Ordinance (LUO) § 21–1.40, which generally provides:

 Appeals from the action of the director in the administration of . . . the LUO shall be to the zoning board of appeals as provided by Section 6–909 of the city charter. Appeals shall be filed *within 30 days of the mailing or service of the director's decision.*

(Emphasis added.)

veals exactly when the DLU Order was mailed.

If Appellees wished to measure the timeliness of Appellant's appeal to the ZBA from the date the DLU Order was mailed, it was incumbent on them to determine and prove the date of mailing. In the present case, Appellees submitted evidence that delivery of the DLU Order occurred on August 28, 1991. However, they submitted no evidence to prove that the DLU Order was mailed, i.e., deposited in a United States Post Office or post office box, 4A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1148, at 432–33 (1987), on August 27, 1991. Consequently, the circuit court was wrong to measure the timeliness of Appellant's appeal to the ZBA from the August 27, 1991 date.

## C.

■ Relying on HRCP Rule 5(b), *Life of the Land, Inc. v. Land Use Commission*, 61 Haw. 3, 594 P.2d 1079 (1979), and *Korean Buddhist Dae Won Sa Temple of Hawaii, Inc. v. Zoning Board of Appeals (Korean Temple)*, 9 Haw.App. 298, 837 P.2d 311, *cert. granted*, 73 Haw. 626, 834 P.2d 1315, *and cert. dismissed*, 74 Haw. 651, 843 P.2d 144 (1992), Appellees argue that since the DLU Order was delivered to Appellant on August 28, 1991, we must presume that the DLU Order was mailed on August 27, 1991. For the following reasons, we decline to do so.

First, according to the record, the offices of both the DLU Director and Appellant are located within a few blocks from each other in downtown Honolulu. Therefore, it is entirely possible that the DLU Order was mailed and delivered on the same day.

■ Second, HRCP Rule 5(b) is a rule "govern[ing] the procedure in the circuit courts of the State in all suits of a civil nature," HRCP Rule 1, and is not applicable to a petition from the DLU Director to the ZBA. Even if it were applicable, the rule does not require us to presume that the DLU Order was mailed on August 27, 1991. HRCP Rule 5(b)[3] provides that service of pleadings and other papers shall be made upon a party by either delivery or mailing. The rule also provides that "[s]ervice by mail is complete upon mailing." Where service is made by mail, therefore, HRCP Rule 5(b) requires proof of mailing. *See discussion*, 4A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1148 ("Traditionally, the time of mailing has been determined by the postmark on the letter, which constitutes an official statement as to the time and place the missive passed through the postal system.").

■ Moreover, HRCP Rule 5(b) invokes HRCP Rule 6(e),[4] which grants two addition-

---

3. Hawai'i Rules of Civil Procedure (HRCP) Rule 5(b) provides, in pertinent part, as follows:

> (b) ... Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself [or herself] is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him [or her] or by mailing it to him [or her] at his [or her] last known address or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at his [or her] office with his [or her] clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at his [or her] dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. *Service by mail is complete upon mailing.*

(Emphasis added.)

4. HRCP Rule 6(e) provides:

> *Additional time after service by mail.* Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him [or her] and the notice or paper is served upon him [or her] by mail, 2 days shall be added to the prescribed period.

Professors Wright and Miller have commented that the counterpart Rule 6(e) of the Federal Rules of Civil Procedure (FRCP), which provides an additional three days to take action where service has been made by mail

> clearly is intended to protect parties who are served notice by mail from suffering a systematic diminution of their time to respond through the application of Rule 5(b), which provides that service is complete upon mailing, not receipt; the additional three days provided by Rule 6(e) to the party being served represent a reasonable transmission time, and a fair compromise between the harshness of measuring strictly from the date of mailing and the

al days to perform any act required to be taken after service of a notice or other paper, where the notice or paper is served by mail. Therefore, even if Appellees were able to prove that the DLU Order was mailed on August 27, 1991, HRCP Rule 6(e) would authorize Appellant thirty-two days within which to file an appeal. The thirty-second day after August 27, 1991 was Saturday, September 28, 1991, a weekend date. Pursuant to HRCP Rule 6(a),[5] therefore, the due date for Appellant's appeal would have been extended to Monday, September 30, 1991.

Third, Appellees' reliance on the *Life of the Land* and *Korean Temple* cases is misplaced. Both cases involved appeals of an administrative agency's action to the circuit court pursuant to HRS § 91–14 (1995), which is not the factual situation presented here. Furthermore, unlike LUO § 7.80, which provides that an appeal to the ZBA shall be filed "within 30 days after the date of mailing or delivery of the order," HRS § 91–14 requires that review proceedings "be instituted in the circuit court within thirty days after the preliminary ruling or within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court[.]" The dispositive issue in *Life of the Land* and *Korean Temple*, therefore, was what constituted "service" of the certified copy of the final decision and order for purposes of triggering the time period for filing an appeal.

In *Life of the Land*, the timeliness of an appellant's appeals to the circuit court from two Land Use Commission decisions pursuant to HRS § 91–14 (1975) was at issue. HRS § 91–14 stated:

> Except as otherwise provided herein, proceedings for review shall be instituted in the circuit court within thirty days after the preliminary ruling or *within thirty days after service of the certified copy of the final decision and order of the agency....*

61 Haw. at 10, 594 P.2d at 1083 (emphasis in case). In holding that the two appeals were timely, the Hawaiʻi Supreme Court stated:

> The April 22, 1975 ... Decision and Order of the LUC was received by appellant on April 29, 1975, presumptively having been mailed by the LUC on April 28, 1975. Appellant's notice of appeal to the circuit court was filed on May 28, 1975.
>
> The May 21, 1975 ... decision was received by appellant on June 5, 1975, presumptively having been mailed by the LUC on June 4, 1975. Appellant's notice of appeal was filed on July 3, 1975.
>
> Both appeals were filed within thirty days after service of the LUC decisions as provided by HRS § 91–14(b) (1975).
>
> We find appellant's appeals timely.

61 Haw. at 10–11, 594 P.2d at 1083–84. The supreme court did not explain what constituted "service" for purposes of HRS § 91–14(b). However, the court concluded, based on the recited facts, that the appeals would have been timely whether measured from the date of delivery or mailing to the appellant. In the first case, for example, the appellant filed a notice of appeal on May 28, 1975, twenty-nine days after the appellant's receipt of the decision on April 29, 1975 and thirty days after the presumed date on which the decision was mailed to the appellant. In the second case, the notice of appeal was also filed within thirty days after the appellant's receipt or the presumed date of mailing of the decision.

In *Korean Temple*, the appellant's appeal from a January 11, 1990 ZBA order was filed with the circuit court on February 16, 1990. The record on appeal contained an affidavit by the ZBA's secretary that she had personally mailed a certified copy of the ZBA order to the appellant's attorney at his business

---

indefiniteness of attempting to measure from the date of receipt, which in many cases would be unverifiable.
4A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1171, at 514–15 (1987).

**5.** HRCP Rule 6(a) provides, in relevant part:
*Computation.* In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday or a holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday or a holiday.

address on January 12, 1990. The record also included an affidavit from the appellant's attorney that the ZBA order was not received until January 17, 1990, the date confirmed by the certified mail receipt as the date of delivery. This court concluded, *sua sponte,* that the circuit court lacked jurisdiction to consider the merits of the appeal because the period for filing an appeal under HRS § 91–14(b) began to run from the date of mailing and measured from that date, the appellant's filing of the appeal was untimely.

In reaching this conclusion, we referred to the supreme court's *Life of the Land* decision:

> *Life of the Land* confirms our conclusion that service of the certified copy of an administrative agency's decision is complete when the certified copy is deposited in the mail. In *Life of the Land,* both notices of appeal were filed within 30 days of the appellants' receipt of the agency's decision. Nothing in the opinion indicates the exact date when the decisions were mailed. If receipt of the notice marked the beginning point of the 30–day appeal period, the supreme court could, without more, have held that the notices of appeal were timely filed. Instead, the supreme court, purposefully in our view, presumed that the mailings occurred one day before the decisions were received. The presumption clearly indicates that the supreme court considered that the period for filing an appeal under HRS § 91–14(b) began on the date of mailing.
>
> In the instant case, the certified copy of the ZBA Order was mailed on January 12, 1990. The thirtieth day after mailing was February 11, 1990, which, however, was a Sunday. Therefore, the appeal period was extended to Monday, February 12, 1990. Rule 6(a), HRCP. Under Rule 6(e), HRCP, [appellant] was required to file the notice of appeal no later than February 14, 1990. The notice of appeal was filed on February 16, 1990, two days late.

9 Haw.App. at 305–06, 837 P.2d at 314–15.

Appellees seem to construe our decision in *Korean Temple* as concluding that the term "service" for purposes of calculating the time for filing an appeal under HRS § 91–14(b) (1993) refers exclusively to the date of mailing. However, HRS § 91–14(b) provides that service of an agency's decision shall be "pursuant to rule of court," and as noted earlier, HRCP Rule 5(b) provides for service by either delivery or mail. Therefore, delivery remains a viable means of service under HRS § 91–14(b). Where proof of service by mail is made, however, and the time for filing an appeal, as measured from the mailing date, has expired, the circuit court has no jurisdiction to consider the merits of the appeal.

**D.**

Since Appellees failed to establish proof of mailing in this case, we are left with only the date of delivery of the DLU Order as the measuring rod for determining the timeliness of Appellees' appeal to the ZBA. The record indicates that the DLU Order was delivered to Appellant on August 28, 1991. Appellant's appeal to the ZBA was filed on September 27, 1991, exactly thirty days after the delivery of the order. Consequently, Appellant's appeal to the ZBA was timely, and the circuit court erred in denying Appellant's appeal for lack of jurisdiction.

In light of our conclusion that Appellant's appeal was timely, we need not address the question of whether ZBA Rule 3.2, which establishes the filing deadline for petitions for appeals, is waivable, and whether the ZBA did waive the deadline in this case.

II. *Whether the addition was grandfathered in as a legal "nonconforming use" or "nonconforming structure" under the LUO.*

HRS § 46–4 (1993) sets forth the general parameters for the exercise of a county's zoning powers. Subsection (a) of the statute provides in relevant part as follows:

> Zoning in all counties shall be accomplished within the framework of a long range, comprehensive general plan prepared or being prepared to guide the overall future development of the county.... The zoning power granted herein shall be

exercised by ordinance which may relate to:

\* \* \*

(8) Building setback lines and future street lines.

\* \* \*

(10) The percentage of lot which may be occupied, size of yards, courts, and other open spaces.

\* \* \*

*Neither this section nor any ordinance enacted under this section shall prohibit the continuance of the lawful use of any building or premises for any* trade, industry, residential, agricultural, or *other purpose for which the building or premises is used at the time this section or the ordinance takes effect* [.]

(Emphases added.)

Consistent with HRS § 46–4, the LUO, upon its adoption, included a grandfather provision, LUO § 21–3.120, which states that "nonconforming structures" and "nonconforming uses" "may be continued," subject to certain provisions not applicable to this case. 1990 ROH at 21–29. LUO § 21–9.1 defines "nonconforming structure" and "nonconforming use" as follows:

"Nonconforming structure" means a structure which was *previously lawful* but which does not comply with the sign, density, yard, setback or height regulations of the district, ... in which it is located, either on the effective date of this chapter or as a result of any subsequent amendment[.]

"Nonconforming use" means any use of a structure or a zoning lot which was *previously lawful* but which does not conform to the applicable use regulations of the district in which it is located, either on the effective date of this chapter or as a result of any subsequent amendment[.]

1990 ROH at 21–203 (emphases added).

It is undisputed that at the time the storage addition was constructed, the CZC, the zoning ordinance then in effect, required no rear yard setback for the property. Appellant therefore contends that the continued existence of the addition cannot be prohibited pursuant to HRS § 46–4(a) and the addition must be grandfathered in as a "previously lawful" nonconforming use or structure pursuant to LUO §§ 21–3.120 and 21–9.1. Appellees argue, on the other hand, that the addition cannot be considered a "previously lawful" nonconforming structure because Appellant failed to produce a building permit for the addition.

The dispositive issue, therefore, is whether the terms "lawful," as used in HRS § 46–4, and "previously lawful," as used in LUO § 21–9.1, refer to (a) lawfulness under the zoning laws or ordinances or (b) lawfulness under any and all laws, ordinances, or rules to which the addition may be subject.

■ We conclude that for purposes of determining whether a structure was grandfathered in as a "previously lawful" nonconforming structure under the LUO, the lawfulness of the structure should be measured by reference to the zoning code or ordinance in existence at the time the structure was built. The fact that the current property owner cannot prove that a building permit for the structure was obtained prior to construction will not render the structure automatically unlawful under a zoning ordinance adopted after the structure was constructed. Our conclusion is based on the following reasons.

### A.

First, we note that the right of a property owner to the continued existence of uses and structures which lawfully existed prior to the effective date of a zoning restriction is grounded in constitutional law. 8A *McQuillin Municipal Corporations* §§ 25.180–25.180.20, at 8–9 (3d ed.1994).

■ The United States and Hawai'i Constitutions both provide that no person shall be deprived of property without due process of law. United States Constitution, Amendment V; Hawai'i Constitution, art. I § 5. Therefore, due process principles protect a property owner from having his or her vested property rights interfered with, 8A *McQuillin Municipal Corporations* § 25.180.20, at 9, and preexisting lawful uses of property are generally considered to be

vested rights that zoning ordinances may not abrogate. 83 Am.Jur.2d *Zoning and Planning* § 624, at 520 (1992); 8A *McQuillin Municipal Corporations* § 15.180.20, at 10.

 In this case, Appellees concede that the addition was a permitted structure under the zoning ordinance in existence at the time the LUO was adopted. Requiring Appellant to remove the addition and pay daily fines until the addition was removed would constitute an interference with Appellant's vested property rights, in violation of the due process clauses of the federal and state constitutions.

### B.

 It is a fundamental rule of statutory construction that a

court's primary duty is to ascertain and implement the intention of the [legislative body]. In ascertaining intent, the language of the provision must be read in the context of the entire statute and construed in a manner consistent with its purposes. "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another."

*State v. Cornelio*, 84 Hawai'i 476, 487, 935 P.2d 1021, 1032 (1997) (quoting *State v. Kumukau*, 71 Haw. 218, 224, 787 P.2d 682, 686 (1990) (citations omitted)). The construction of municipal ordinances is governed by the same rules of statutory construction. *Foster Village Community Ass'n v. Hess*, 4 Haw. App. 463, 469, 667 P.2d 850, 854 (1983). Moreover, zoning laws and ordinances are strictly construed, "as they are in derogation of the common law, and their provisions may not be extended by implication." *Id.*

 Examined according to the foregoing rules, we conclude that the grandfather protections afforded to a property owner under HRS § 46–4(a) and the LUO are intended to prohibit new zoning ordinances from interfering with an owner's lawful uses of a building or premises under an existing zoning ordinance.

HRS § 46–4 specifically refers to a "lawful use of any building or premises for any ...

purpose for which the building or premises is used at the time this section or the [zoning] ordinance takes effect." Since the statute refers expressly to uses of a building or premises at the time a zoning ordinance takes effect, the protection afforded to a property owner under HRS § 46–4 relates, on its face, to lawful uses of a building or premises under existing zoning ordinances.

The definitions of "nonconforming use" and "nonconforming structure" in the LUO similarly refer to uses or structures which were "previously lawful" but which do not conform to use, density, yard, setback or height regulations "on the effective date of this chapter." Since "this chapter" refers to zoning, the clear language of the LUO indicates that previous lawfulness of use is to be determined by reference to the zoning ordinances in existence at the time that a property owner's structure or use of property was rendered unlawful under a change to the zoning laws.

### C.

Construing other ordinances *in pari materia* with the nonconforming use or structure protections under the LUO also leads to the conclusion that such protections are not dependent on proof of compliance with Building Code requirements.

The purposes of the LUO and Building Code are different. According to 1990 ROH § 21–1.20:

The purpose of the LUO is to regulate land use in a manner that will encourage orderly development in accordance with adopted land use policies, ... and to promote and protect the public health, safety and welfare by ... [m]inimizing adverse effects resulting from the inappropriate location, use or design of sites and structures; ... [c]onserving the city's natural, historic and scenic resources and encouraging design which enhances the physical form of the city; and ... [a]ssisting the public in identifying and understanding regulations affecting the development and use of land.

LUO § 21–1.20(a). The purpose of the Building Code, on the other hand, is "to

provide minimum standards to safeguard life or limb, health, property and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures within this jurisdiction[.]" Uniform Building Code § 101.2 (1991 ed.) (incorporated as part of County Building Code by ROH § 16–1.1). In other words, the LUO regulates what is placed on property, while the Building Code is concerned with whether structures are built properly.

The DLU Director, who is specifically charged with administering "the zoning and subdivision ordinances and rules and regulations[,]" 1973 RCCH § 6–903, and enforcing the LUO, 1990 ROH § 21–1.30, is not authorized by any county charter or ordinance to enforce the Building Code. The Building Code has its own enforcement scheme. According to the County charter, the DLU Director is required to have "five years of training and experience in a responsible planning position, at least three years of which shall have been in a responsible administrative capacity in charge of major land utilization activities." RCCH § 6–902. In contrast, the Building Superintendent "shall be a registered architect or a registered professional engineer and shall have had a minimum of five years of training and experience in an architectural or engineering position, . . . ." RCCH § 6–1402. Under the County charter and ordinances, therefore, it is the Building Superintendent, a person required to possess technical experience and expertise, and not the DLU Director, who is authorized to enforce the Building Code.

### D.

■ The weight of authorities also supports the conclusion that the existence of a building permit is irrelevant to the question of whether a structure is grandfathered in for zoning purposes. For example, in *Hooper v. City of St. Paul*, 353 N.W.2d 138 (Minn.1984), the Minnesota Supreme Court concluded that lack of a building permit for the construction of a carriage house did not render the use "unlawful" under the zoning code. The court stated that if the carriage house fails to meet the requirements of the building code, the city must seek its remedy in the enforcement provision of the building code. *Id.* at 141. Similarly, a New Jersey court held that a prior nonconforming use must not have been in violation of a prior *zoning* ordinance (emphasis original). *Scavone v. Totowa*, 49 N.J.Super. 423, 140 A.2d 238, 241 (N.J.Super.Ct.App.Div.1958). In that case, a certificate of occupancy, required by the zoning ordinance, was never procured. The court reasoned that since the municipality does not generally enforce the provision, it would be unjust and discriminatory to destroy the defendant's property rights "upon so technical an irregularity, under the circumstances." *Id. See also Mellow v. Board of Adjustment*, 565 A.2d 947 (Del.Super.Ct.1988), *aff'd*, 567 A.2d 422 (Del. Supr.Ct.1989) (property owner's failure to obtain license for car refurbishing business did not make business unlawful nonconforming use of property); *Henning v. Goldman*, 8 Misc.2d 228, 169 N.Y.S.2d 817 (N.Y.Sup.Ct. 1957) (failure of property owner to pay a $15 parking lot license did not change the existing nonconforming use of property for public parking purposes); *Carroll v. Hurst*, 103 Ill. App.3d 984, 59 Ill.Dec. 587, 431 N.E.2d 1344 (1982) ("the better rule is to make a distinction between violations of statutes designed to regulate land use as opposed to violations of statutes whose purpose is totally unrelated to land use planning"; therefore, a landowner's failure to obtain a license to operate an automobile junkyard did not deny nonconforming use status to property); *City of Middlesboro Planning Comm'n v. Howard*, 551 S.W.2d 556 (Ky.1977) (violation of a revenue producing ordinance, i.e., failure to purchase a $25 privilege license, "is not sufficient in itself to forfeit a nonconforming use"). *But see, contra, Bird v. Delaware Muncie Metro. Plan Comm'n*, 416 N.E.2d 482, 487–88 (Ind.Ct.App.1981) (since petitioners violated the then effective zoning ordinance by not obtaining a building permit or certificate of occupancy, petitioners' structures did not acquire lawful status as legal nonconforming uses); *Province of Meribah Society of Mary, Inc. v. Village of Muttontown*, 148 A.D.2d 512, 538 N.Y.S.2d 850, 852 (N.Y.App.Div. 1989) (where petitioner did not obtain a building permit required by the Building

Zone Ordinance, petitioner's use of the premises was not a "legal nonconforming use").

### E.

■ For the above-mentioned reasons, we conclude that the terms "lawful use" and "previously lawful," as used in HRS § 46-4 and the LUO, refer to compliance with previous zoning laws, not the building codes or other legal requirements that may be applicable to the construction or operation of a structure. As a result, Appellant should not have been required to produce a building permit in order to establish that the addition was a "nonconforming structure" or "nonconforming use."

III. *Whether the ZBA has authority to review the DLU Director's imposition of a fine.*

■ At the May 14, 1992 ZBA hearing, after it became apparent that a concurrence of three members of the ZBA could not be reached on Appellant's petition and that the hearing would need to be continued, a concern was expressed by a ZBA member that the daily fines which had been assessed on Appellant by the DLU Director were escalating. At that point, the deputy corporation counsel who was advising the ZBA informed its members that "[t]he fines are beyond the powers of the [ZBA]. The [ZBA] can make a recommendation; [sic] however, as you have in the past to the [DLU] Director with respect to staying the fines."

Appellant contends that the ZBA's position that it has no authority to review the fines imposed by the DLU Director is inconsistent with 1973 Revised Charter § 6-909(a). We agree.

Section 6-909(a) provides that

[the ZBA shall] [h]ear and determine appeals from the actions of the [DLU Director] in the administration of the zoning code and subdivision ordinances and any rules and regulations adopted pursuant thereto. An appeal shall be sustained only if the board finds that the director's action was based on an erroneous finding of a material fact, or that the director had acted in an arbitrary or capricious manner or had manifestly abused discretion.

Pursuant to its charter authority, the ZBA is clearly authorized to review the DLU Director's action in imposing fines for violations of the zoning code and subdivision ordinances and to sustain an appeal challenging the fines if the ZBA finds that the DLU Director "manifestly abused [his or her] discretion" or acted "in an arbitrary or capricious manner" in imposing the fines. *See also Windward Marine Resort, Inc. v. Sullivan,* 86 Hawai'i 171, 180, 948 P.2d 592, 601 (1997) (ZBA's "jurisdiction is confined to hearing appeals from the [DLU Director's] orders," and ZBA "may only sustain an appeal if it finds that the [DLU Director's] action was faulty under the three standards set forth in Revised Charter § 6-909").

IV. *Whether an appellant's petition to the ZBA could be denied without the affirmative vote of a majority of the entire board.*

■ Appellant contends that the ZBA lacked authority to deny Appellant's petition because the ZBA failed to reach a majority decision. We disagree. According to ZBA Rule 1.9, which we assume was adopted by the affirmative vote of the requisite majority of the ZBA's membership, the failure of the ZBA to reach a majority decision at two separate meetings "will constitute a denial of the requested action or of an appeal." The rule appears to have been adopted as a practical solution to the problem commonly faced by administrative boards which are required to have the concurrence of a majority of the board's total membership in order to take action, but are unable, because of vacancies, recusals, or disqualifications of its members, to obtain the necessary votes to take action. The rule allows the ZBA to enter an order allowing litigants to proceed to the next higher judicial or administrative tribunal to seek relief, rather than waiting for the ZBA to obtain new members or obtain the necessary votes to determine the petition before it.

### CONCLUSION

In summary, the ZBA did not lack jurisdiction to hear Appellant's petition. Appellees

failed to prove the date on which the DLU Order was mailed to Appellant, and therefore, the timeliness of the petition must be measured by the date of the delivery of the DLU Order to Appellant. The circuit court thus erred in denying Appellant's appeal from the ZBA Order for lack of jurisdiction.

The terms "lawful use" and "previously lawful," as used in HRS § 46-4 and the LUO's definitions of "nonconforming structure" and "nonconforming use" refer to lawful compliance with previous zoning laws, not building codes. Since the addition was lawful under the CZC and the CZC did not govern the acquisition of building permits, Appellant should not have been required to produce a building permit in order to establish that the addition was grandfathered in as a "nonconforming structure" or "nonconforming use" under the LUO.

The concurrence of a majority of the total membership of the ZBA (three members) is required for the ZBA to take any action. However, ZBA Rule 1.9, which we assume was adopted by the requisite number of votes, requires denial of an appeal whenever the ZBA fails to obtain the vote of a majority of its total membership on the matter at two consecutive hearings.

Imposition of fines by the DLU Director may be reviewed by the ZBA for manifest abuse of discretion or arbitrary and capricious action.

For the foregoing reasons, we reverse the March 11, 1993 order of the circuit court denying Appellant's appeal from the ZBA Order.