**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000581
09-AUG-2016
08:15 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---


ROBERT D. FERRIS TRUST,
Plaintiff-Appellant/Appellant,
v.
PLANNING COMMISSION OF THE COUNTY OF KAUAʻI,
COUNTY OF KAUAʻI PLANNING DEPARTMENT, and COUNTY OF KAUAʻI,
Respondents-Appellees/Appellees


NO. CAAP-15-0000581


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 12-1-0349)


August 9, 2016


NAKAMURA, C.J., FOLEY AND FUJISE, JJ.


OPINION OF THE COURT BY FOLEY, J.

Plaintiff-Appellant/Appellant Robert D. Ferris Trust (**Ferris Trust**) appeals from the "Findings of Fact, Conclusions of Law; Decision and Order" entered on September 16, 2013 in the Circuit Court of the Fifth Circuit[1] (**circuit court**).

On appeal, the Ferris Trust contends the circuit court erred in upholding the interpretation, by Defendant-Appellee/Appellee County of Kauaʻi Planning Department (**Planning**

---

[1] The Honorable Randal G.B. Valenciano presided.

**Department**), of the Kaua'i County Comprehensive Zoning Ordinance (**CZO**) as requiring an applicant for a nonconforming use certificate to have authorization from at least a 75% interest of the equitable and legal title of the lot.

## I.   BACKGROUND

The Ferris Trust owned a parcel of land on the island of Kaua'i (**Property**).  The Property was located on land designated by the County of Kaua'i as an agriculture district, which restricted use of the land to approved agricultural purposes and provided for a special tax assessment privilege. The Property contained a single-family dwelling constructed in 2000.  The Ferris Trust began renting the dwelling to vacationers in 2003 under the business name "Retreat at Hale Luana & Plantation."

In 2008, Defendant-Appellee/Appellee County of Kaua'i (**County**) adopted Ordinance Number 864 (**Ordinance 864**), which amended the County's CZO, Kaua'i County Code 1987 (**KCC**) Chapter 8.  Ordinance 864 prohibited new transient vacation rentals (**TVRs**)[2] outside land designated as a Visitor Destination Area, and required the registration of lawfully existing TVRs within six months after the enactment of the amended ordinance. Ordinance 864 § 8-17.10 allowed "the owner, operator or proprietor of any single-family transient vacation rental" operating outside of a Visitor Destination Area to obtain a nonconforming use certificate to continue operating their TVR.

In 2010, the County adopted Ordinance Number 904 (**Ordinance 904**), again amending the CZO, and targeting the grandfathering provision established by Ordinance 864.

On August 23, 2010, Robert D. Ferris (**Ferris**), on behalf of the Ferris Trust, submitted a TVR registration and nonconforming use application for the Property.  The Planning Department acknowledged receipt of the Ferris Trust's application

---

[2] A "transient vacation rental" is "a dwelling unit which is provided to transient occupants for compensation or fees, including club fees, or as part of interval ownership involving persons unrelated by blood, with a duration of occupancy of one hundred eighty (180) days or less."  KCC § 8-1.5.

2

by letter dated October 4, 2010. The Planning Department asked the Ferris Trust to submit "reservation lists, and receipts showing payment along with any other reliable information or proof of a nonconforming use which has been in lawful use prior to March 7, 2008" and "a signed and stamped as built plot, floor, elevation and section drawings by a licensed architect or engineer showing the property as it exists today . . . ."

The Planning Department confirmed receipt of the Ferris Trust's supplemental information supporting its application for a nonconforming use certificate by letter dated January 13, 2011. The Planning Department informed the Ferris Trust that its application was incomplete because the Property was within a Condominium Property Regime (**CPR**) and the Ferris Trust needed the consent of at least 75% of the owners of the lot to be eligible to apply. The Ferris Trust owned two of the four parcels on the lot, which constituted only a 50% ownership interest in the lot for purposes of the Ferris Trust's application.

On August 17, 2011, the Planning Department informed the Ferris Trust that the time period for applying for a nonconforming use certificate ended on August 16, 2011, and asked the Ferris Trust's counsel to advise their clients to cease and desist from further use of land designated as agricultural from further use as TVRs.

On August 22, 2011, the Ferris Trust submitted a "Petition to Appeal Decision of the Planning Director" (**Petition**) to Defendant-Appellee/Appellee Planning Commission of the County of Kauaʻi (**Planning Commission**).

In a letter dated September 25, 2011, the owners of the other two parcels within the CPR, who together held 50% of the ownership interests in the CPR, submitted to the Planning Department their objection to the Ferris Trust's application for a nonconforming use certificate, and sought to intervene in the Ferris Trust's Petition to the Planning Commission.

On October 18, 2012, Hearings Officer Richard F. Nakamura issued "Findings of Fact and Conclusions of Law and

3

Decision and Order" recommending the Planning Commission deny the Ferris Trust's Petition.

On November 26, 2012, the Planning Commission issued its "Findings of Fact and Conclusion of Law and Decision and Order of the Planning Commission of the County of Kaua'i" (**Planning Commission's Denial**) denying the Petition.

The Ferris Trust filed its notice of appeal to the circuit court on December 12, 2010 of the Planning Commission's Denial. The circuit court entered its "Findings of Fact, Conclusions of Law; Decision and Order" on September 16, 2013 affirming the Planning Commission's Denial. The circuit court entered its Final Judgment on July 16, 2015.

The Ferris Trust filed its notice of appeal from the circuit court's decision on August 14, 2015.

## II. STANDARDS OF REVIEW

### A. Secondary Appeals

"Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which this court must determine whether the court under review was right or wrong in its decision." Leslie v. Bd. of Appeals of Cty. of Hawai'i, 109 Hawai'i 384, 391, 126 P.3d 1071, 1078 (2006) (quoting Lanai Co. v. Land Use Comm'n, 105 Hawai'i 296, 306-07, 97 P.3d 372, 382-83 (2004)). "To determine if the decision under review is right or wrong, we "apply the standards set forth in [Hawaii Revised Statutes (**HRS**)] § 91-14(g) [(2012 Repl.)] to the agency's decision." Leslie, 109 Hawai'i at 391, 126 P.3d at 1078 (quoting Ka Pa'akai O Ka'aina v. Land Use Comm'n, 94 Hawai'i 31, 40, 7 P.3d 1068, 1077 (2000). HRS § 91-14(g) provides:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or

(2)   In excess of the statutory authority or
      jurisdiction of the agency; or

(3)   Made upon unlawful procedure; or

(4)   Affected by other error of law; or

(5)   Clearly erroneous in view of the reliable,
      probative, and substantial evidence on the
      whole record; or

(6)   Arbitrary, capricious, or characterized by
      abuse of discretion or clearly unwarranted
      exercise of discretion.

"[C]onclusions of law are reviewable under subsections (1), (2), and (4)[.]" Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawai'i 376, 388, 363 P.3d 224, 236 (2015).

An "agency's decision carries a presumption of validity and [an] appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." Kauai Springs, Inc. v. Planning Comm'n of Cty. of Kauai, 130 Hawai'i 407, 417, 312 P.3d 283, 293 (App. 2013) (quoting In re Water Use Permit Applications, 94 Hawai'i 97, 118-19, 9 P.3d 409, 430-31 (2000)).

B.   Statutory Construction

"When interpreting county charters, municipal ordinances, and administrative rules, the general principles of statutory construction apply." Kellberg v. Yuen, 131 Hawai'i 513, 527, 319 P.3d 432, 446 (2014) (brackets omitted) (quoting Hoke Lele, LLC v. City & Cty. of Honolulu, 129 Hawai'i 164, 167, 296 P.3d 1072, 1075 (App. 2013)).

> We interpret statutes de novo. Shimabuku v. Montgomery Elevator Co., 79 Hawai'i 352, 357, 903 P.2d 48, 51 (1995). When construing a statute, the starting point is the language of the statute itself. Richardson v. City & [Cty.] of Honolulu, 76 Hawai'i 46, 63, 868 P.2d 1193, 1210 . . . . "Courts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute. State v. Kaakimaka, 84 Hawai'i 280, 289-90, 933 P.2d 617, 626-27 (quoting State v. Ortiz, 74 Haw. 343, 351-52, 845 P.2d 547, 551-52 . . . (1993)[, abrogated on other grounds by State v. Moore, 82 Hawai'i 202, 921 P.2d 122 (1996)]. Words are given their common meaning unless some wording in the statute "requires a different interpretation." Saranillo v. Silva, 78 Hawai'i 1, 10, 889 P.2d 685, 694 (1995) (citing Ross v. Stouffer Hotel Co. (Hawaii), Ltd., 76 Hawai'i 454, 461, 879 P.2d 1037, 1044-45 (1994)).

Moreover,

> although the intention of the legislature is to be obtained primarily from the language of the statute itself, we have rejected an approach to statutory construction which limits us to the words of a statute, for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Thus, the plain language rule of statutory construction does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

Sato v. Tawata, 79 Hawaiʻi 14, 17, 897 P.2d 941, 944 (1995) . . . .

Keliipuleole v. Wilson, 85 Hawaiʻi 217, 221, 941 P.2d 300, 304 (1997) (citations, brackets, and ellipsis omitted).

> Zoning laws, whether statutes or ordinances, inasmuch as they curtail and limit uses of real estate and are in derogation of the common law must be given strict construction and the provisions thereof may not be extended by implication. Nevertheless, they should be read according to the natural and most obvious import of the language when there is no manifest legislative intent contrarywise.

Maui Cty. v. Puamana Mgmt. Corp., 2 Haw. App. 352, 356, 631 P.2d 1215, 1218 (1981) (ellipsis omitted) (quoting Moyer v. Bd. of Zoning Appeals, 233 A.2d 311, 316 (Me. 1967)).

### III. DISCUSSION

On appeal, the Ferris Trust argues that the Planning Commission erred in interpreting the term "applicant" in KCC § 8-17.10[3] as having the same meaning as "applicant" in the

---

[3] The version of KCC § 8-17.10 in effect on August 23, 2010, the date the Ferris Trust applied for a nonconforming use certificate, is reflected in the 2012 republication of the KCC. Section 8-17.10 was not amended between Ordinance 904, which took effect on July 28, 2010, and the republication in 2012. Subsequently, Section 8-17.10 has been amended most recently by Ordinance 974, which took effect on September 30, 2014.

(continued...)

[3](...continued)
KCC § 8-17.10, from the 2012 republication, provided in pertinent part:

> Sec. 8-17.10    Nonconforming Use Certificates for Single-Family Vacation Rentals.
>
> (a)    The purpose of this Section is to provide a process to identify and register those single-family transient vacation rentals as nonconforming uses which have been in lawful use prior to the effective date of the ordinance codified in this Article and to allow them to continue subject to obtaining a nonconforming use certificate as provided by this Section.
>
> (b)    <u>The owner, operator or proprietor of any single-family transient vacation rental which operated outside of a visitor designation area prior to March 7, 2008, shall obtain a nonconforming use certificate for single-family vacation rentals.</u>
>
> (c)    No nonconforming use certificate shall be issued by the Planning Director unless the use as a single-family rental is a legal use under the [CZO], and the applicant provides a sworn affidavit and demonstrates to the satisfaction of the Planning Director that a dwelling unit was being used as a vacation rental on an ongoing basis prior to March 7, 2008. The Planning Director, in making the decision, shall take into consideration, among other things, the following guidelines:
>
> > (1)    The applicant had a State of Hawaiʻi general excise tax license and transient accommodations tax license for the purpose of the lawful operation of single-family transient vacation rentals for a period long enough to demonstrate actual payment of taxes.
> >
> > (2)    That prior to the effective date of the ordinance codified in this Article, applicant had deposits for reservations by transient guests in exchange for compensation for use of subject property as a vacation rental.
> >
> > (3)    That applicant had transient guests occupy subject property in exchange for compensation prior to the effective date of said ordinance, with a pattern of consistency that evidences an ongoing lawful enterprise.
>
> (d)    Applications for nonconforming use certificates for single-family transient vacation rentals located on land designated "Agricultural" pursuant to Chapter 205 of the Hawaiʻi Revised Statutes shall be made within sixty (60) days of the effective date of the ordinance codified in this Article. If an operator as defined under Section 8-17.10(c) fails to apply for a nonconforming use certificate within sixty (60) days of said effective date, then the Planning Director shall assess an administrative late application processing fee of one thousand five hundred dollars

(continued...)

7

definitions provision of the CZO.  The CZO defined applicant as "any person having a controlling interest (seventy-five percent (75%) or more of the equitable and legal title) of a lot[.]"  KCC § 8-1.5.

The Ferris Trust argues that "applicant" under KCC § 8-1.5 was not intended to limit the word "applicant" as used in KCC § 8-17.10.  The Ferris Trust argues that the Planning Department's interpretation of KCC § 8-17.10 would deprive the Ferris Trust of its "rights under HRS § 46-4, the United States Constitution, and the Hawaii State Constitution[.]"

The counties of the state of Hawai'i "derive their zoning powers from HRS § 46-4(a) [(2015 Supp.)], referred to as the Zoning Enabling Act."  Kaiser Hawaii Kai Dev. Co. v. City & Cty. of Honolulu, 70 Haw. 480, 483, 777 P.2d 244, 246 (1989).  HRS § 46-4(a) provides, in pertinent part,

> The powers granted herein shall be liberally construed in favor of the county exercising them, and in such a manner as to promote the orderly development of each county or city and county in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole.  This section shall not be construed to limit or repeal any powers of any county to achieve these ends through zoning and building regulations, . . .
>
> Neither this section nor any ordinance enacted pursuant to this section shall prohibit the continued lawful use of any building or premises for any trade, industrial, residential, agricultural, or other purpose for which the

---

[3] (...continued)
             ($1,500.00) at filing. . . .

             . . . .

    (e)   The owner, operator, or proprietor shall have the burden of proof in establishing that the use is properly nonconforming based on the following documentation which shall be provided to the Planning Director as evidence of a nonconforming use: records of occupancy and tax documents, including all relevant State of Hawai'i general excise tax filings, all relevant transient accommodations tax filings, Federal and/or State of Hawai'i income tax returns for the relevant time period, reservation lists, and receipts showing payment.  Other reliable information may also be provided.  Based on the evidence submitted, the Planning Director shall determine whether to issue a nonconforming use certificate for the single-family transient vacation rental.

(Emphasis added.)

building or premises is used at the time this section or the
ordinance takes effect[.]

(Emphasis added.)

The statutory protection of lawfully existing uses and
structures "prior to the effective date of a zoning restriction
is grounded in constitutional law." Waikiki Marketplace Inv. Co.
v. Chair of Zoning Bd. of Appeals of City & Cty. of Honolulu, 86
Hawai'i 343, 353, 949 P.2d 183, 193 (1997) (citing 8A McQuillin
Municipal Corporations §§ 25.180-25.180.20, at 8-9 (3d ed.
1994)). Under the United States and Hawai'i Constitutions,
"preexisting lawful uses of property are generally considered to
be vested rights that zoning ordinances may not abrogate."
Waikiki Marketplace, 86 Hawai'i at 353-54, 949 P.2d at 193-94.
The Ferris Trust is a property owner under Hawai'i law[4] by virtue
of its ownership of the condominium and is therefore entitled to
constitutional protection. Waikiki Martketplace, 86 Hawai'i at
353, 949 P.2d at 193 ("The United States and Hawai'i
Constitutions both provide that no person shall be deprived of
property without due process of law." (citing U.S. Const. amend.
V; Haw. Const. art. I, § 5)).

The rules of statutory construction dictate that, if
possible, we must interpret a statute to avoid violating
constitutional provisions. Life of the Land, Inc. v. West Beach
Dev. Corp., 63 Haw. 529, 531, 631 P.2d 588, 590 (1981); see 2A
Norman Singer & Shambie Singer, Sutherland Statutory Construction
§ 45:11 (7th ed. 2015) ("The fact that one among alternative
constructions involves serious constitutional difficulties is

---

[4] Under the Condominium Property Act, HRS chapter 514A,

> [e]ach apartment, together with the common interest
> appertaining thereto, shall for all purposes constitute real
> property and may be individually conveyed, leased, or
> encumbered and be the subject of ownership, possession, or
> sale and for all other purposes be treated as if it were
> sole and entirely independent of the other apartments in the
> property of which it forms a part, and the corresponding
> individual titles and interests shall be recordable.

HRS § 514A-4 (Supp. 2015). Chapter 514A generally applies to condominiums
created before July 1, 2006, which covers the property owned by the Ferris
Trust. See HRS § 514A-1.5 (Supp. 2015).

reason to reject that interpretation in favor of a reasonable, constitutional alternative, if available.").

KCC § 8-17.10 is ambiguous as to who is eligible to apply for a nonconforming use certificate. The ordinance refers to "[t]he owner, operator, or proprietor of any single family transient vacation rental which operated outside of a Visitor Destination area prior to March 7, 2008" as the party who "shall obtain" a nonconforming use certificate and who shall have the "burden of proof in establishing" the nonconforming use. KCC § 8-17.10(b), (e). The ordinance also refers to the "applicant," which is generally defined in the CZO definition section to mean, in relevant part, a "person having a controlling interest (seventy-five percent (75%) or more . . .) of a lot." KCC § 8-1.5. In light of the express purpose of KCC § 8-17.10 and the need to avoid serious constitutional questions, we construe the ordinance as permitting the "owner, operator, or proprietor of any single family transient vacation rental" who had been operating before March 7, 2008, to apply for a nonconforming use certificate.

The express purpose of KCC § 8-17.10 is to "provide a process to identify and register those single-family transient vacation rentals as nonconforming uses which have been in lawful use prior to the effective date of the ordinance [which specifically banned such rentals outside of Visitor Destination Areas] and to allow them to continue subject to obtaining a nonconforming use certificate as provided by this Section." KCC § 8-17.10(a). This purpose is consistent with the requirements of HRS § 46-4(a) as well as the constitutional protection provided to property owners with vested rights to pre-existing lawful uses of their property. Persons with less than a seventy-five percent ownership interest may be able to establish vested rights to prior lawful nonconforming uses. Therefore, precluding such persons from even applying for a nonconforming use certificate would be inconsistent with the purpose of the ordinance to identify those engaged in the prior lawful use of their property as a transient vacation rental and to allow them

10

to apply to continue that use. In contrast, construing the ordinance to permit the "owner, operator, or proprietor of any single family transient vacation rental which operated outside of a Visitor Destination Area prior to [the effective date of the ordinance specifically banning such use]" to apply for a nonconforming use certificate would be consistent with and advance the express purpose of the ordinance. It would give all those who could potentially establish a vested right to continue using their property as a transient vacation rental the opportunity to apply for, and demonstrate their entitlement to, a nonconforming use certificate.

Moreover, if we interpret KCC § 8-17.10 to restrict the eligibility of applicants based on the definition of "applicant" in KCC § 8-1.5, it would raise serious constitutional questions. See Waikiki Marketplace, 86 Hawai'i at 353-54, 949 P.2d at 193-94. As noted, persons with less than a seventy-five percent ownership interest may have vested rights to pre-existing lawful uses. We avoid the constitutional questions by interpreting KCC § 8-17.10 to permit an "owner, operator, or proprietor of any single family transient vacation rental" who had been operating prior to the effective date of the ordinance to apply for a nonconforming use certificate.

We conclude that the Ferris Trust established that it was an "owner, operator, or proprietor" of a single-family transient vacation rental prior to March 7, 2008. An "operator" is simply "one [who] operates a business." Webster's Tenth New Collegiate Dictionary 813 (2000). A "proprietor" is "[a]n owner, esp. one who runs a business." Black's Law Dictionary 1414 (10th ed. 2009). Although the Ferris Trust does not satisfy the definition of "owner" under KCC § 8-1.5,[5] it falls within the ordinary meaning of "operator" and "proprietor" based on its operation of its TVR business prior to March 7, 2008.

Because the Ferris Trust was able to prove it was an operator or proprietor of a TVA prior to March 7, 2008, the

---

[5] "Owner" is defined in KCC § 8-1.5 as "the holders of at least seventy-five percent (75%) of the equitable and legal title of a lot."

Planning Department was not permitted to refuse to consider or process the Ferris Trust's application for a nonconforming use certificate on the basis that the Ferris Trust did not have a 75% or more controlling interest in the equitable and legal title of the lot. We conclude that the circuit court's decision to uphold the Planning Department's refusal to accept the Ferris Trust's application for a nonconforming use certificate under KCC § 8-17.10 was erroneous.

## IV. CONCLUSION

Therefore, the "Findings of Fact, Conclusions of Law; Decision and Order" entered on September 16, 2013 in the Circuit Court of the Fifth Circuit is reversed and this case remanded to the circuit court with instructions to remand this case to the County of Kaua'i Planning Department to process the Ferris Trust's application for a nonconforming use certificate.

On the briefs:

Gregory W. Kugle
Christopher J.I. Leong
(Damon Key Leong Kupchak Hastert)
for Plaintiff-Appellant/
Appellant.

Mauna Kea Trask
Office of the County Attorney
County of Kaua'i
for Defendants-Appellees/
Appellees.